LAMBERT, J.
Appellant, Ruth D. LeDoux-Nottingham (“Mother”), challenges the trial court’s final judgment that enforces a Colorado court’s final order granting Appellees, Jennifer Joy Downs and William Glen Downs (“Grandparents”), visitation privileges with Mother’s two minor children, who now reside in Florida with Mother. Mother also appeals the denial of her request to modify the Colorado order to terminate Grandparents’ visitation privileges with the children. Grandparents have cross-appealed the denial of their motion for make-up visitation and for attorney’s fees. -
Mother and ' her ex-husband, the father of the two minor children, were divorced in Colorado in 2010. The father died in 2011 in Colorado. Immediately after his funeral, Mother and the minor children moved to Florida. In the meantime, Grandparents timely initiated a proceeding in Colorado, seeking visitation with the children.
Mother then filed a separate action in Florida to register the Colorado final judgment dissolving her marriage and for a judicial determination that Grandparents have no legal right to time-sharing with her minor children. Grandparents filed a motion to dismiss the Florida proceeding because Colorado had already exercised jurisdiction to address visitation and had not yet ruled. Mother filed a motion to stay the Florida case pending resolution of the Colorado proceedings.[1]'
*562 On October 11, 2012, the Colorado court rendered its final order determining that it was in the best interest of the minor children for Grandparents to have visitation with them and awarded Grandparents three weeks of visitation at certain designated times, together with reasonable telephone contact. On October 24, 2012, Mother amended her petition in Florida to both domesticate and modify the Colorado order awarding Grandparents visitation, arguing that under Florida law, enforcement of the grandparent visitation order is unconstitutional and against public policy. Alternatively, Mother also pleaded that a substantial change in circumstances had occurred since the entry of the Colorado order and requested that Grandparents’ visitation privileges procured in Colorado be terminated.
Grandparents moved for (1) enforcement of the Colorado order, (2) adjudication that Mother was in contempt of court, and (3) make-up visitation. The lower court, after trial, entered the final judgment on appeal, which registered, domesticated, and enforced the Colorado order concerning Grandparents’ visitation rights and denied Mother’s request for modification. The trial court ordered that each party pay their own attorney’s fees and costs and declined to adjudicate Mother in contempt of court, making a specific finding that Mother’s noncompliance with the Colorado order regarding visitation was “not against the interest of the children.” The court, however, specifically reserved jurisdiction on Grandparents’ motion for enforcement and make-up visitation.
On appeal, Mother does not challenge the jurisdiction of the Colorado court to enter its final order awarding Grandparents visitation privileges with her children. Nor does she contest the domestication of the Colorado order pursuant to the Full Faith and Credit. Clause of the United States Constitution. See Art. IV, § 1, U.S. Const. (“Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.”). Rather, Mother argues that the Colorado order is unenforceable as a matter of Florida law and public policy because it violates child-rearing autonomy guaranteed to parents under the Florida Constitution. See Art. I, § 23, Fla. Const. (stating that “[e]very natural person has the right to be let alone and free from governmental intrusion into the person’s private life except as otherwise provided herein”); see also Von Eiff v. Azicri, 720 So.2d 510, 516 (Fla.1998) (“There may be many beneficial relationships for a child, but it is not for the government to decide with whom the child builds these relationships. This concept implicates the very core of our constitutional freedoms and embodies the essence of Florida’s constitutional right of privacy.”).
This court has twice rejected a similar public policy argument. In Bellow v. Bellow, 736 So.2d 759 (Fla. 5th DCA 1999), the mother and sister of the ex-wife’s deceased husband initiated an action in the trial court to enforce and domesticate a Louisiana decree that awarded them visitation privileges with the minor children. 736 So.2d at 760. In affirming the trial court’s judgment that the Louisiana decree was entitled to full faith and credit, we wrote:
We have found no reason for invalidating the trial court’s recognition of the Louisiana judgment pursuant to the full faith and credit clause of the United States Constitution, and reject the appellant’s argument that this judgment of a sister state violates her privacy rights *563 under the guise that it violates the broad scope of Article I, Section 28 of the Florida Constitution. A foreign judgment is not rendered unenforceable because it may violate a public policy of the forum state. See M & R Investments Co. v. Hacker, 511 So.2d 1099 (Fla. 5th DCA 1987).
Id. (footnote omitted).
Five years later, in Shingel v. Peters, 867 So.2d 1281 (Fla. 5th DCA 2004), we affirmed the lower court’s order enforcing an Illinois court’s judgment that granted the maternal grandmother and maternal great-grandmother visitation rights with two minor children who were then residing in Florida with their parents. 867 So.2d at 1281. At that time, we explicitly declined the appellant’s request to recede from Bellow. Id.
Previously, in Baker by Thomas v. General Motors Corp., 522 U.S. 222, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998), the United States Supreme Court addressed the application of the Full Faith and Credit Clause as it applies to judgments of foreign states:
In numerous cases this Court has held that credit must be given to the judgment of another state although the forum would not be required to entertain the suit on which the judgment was founded. The Full Faith and Credit Clause does not compel a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate. Regarding judgments, however, the full faith and credit obligation is exacting. A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land. For claim and issue preclusion (res judicata) purposes, in other words, the judgment of the rendering State gains nationwide force.
A court may be guided by the forum State’s “public policy” in determining the law applicable to a controversy. But our decisions support no roving “public policy exception” to the full faith and credit due judgments.
522 U.S. at 232-33, 118 S.Ct. 657 (footnotes omitted) (citations omitted) (internal quotation marks omitted). Baker by Thomas makes clear that the public policy of one state has no effect on whether the state must give full faith and credit to judgments, rather than law, of another state. See id. Pursuant to the Full Faith and Credit Clause, trial courts are required, without discretion, to give recognition to final judgments of another state when applicable. See id.
Here, the trial court properly enforced the Colorado order determining visitation. Since the Colorado order was a final judgment and emanated from a “child custody proceeding” within the meaning of section 61.503(4), Florida Statutes (2013),[2] it became enforceable in Florida pursuant to the Full Faith and Credit Clause as well as section 61.526, Florida Statutes. See id.; § 61.526(1), Fla. Stat. (2013) (“A court of this state shall recognize and enforce a child custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with this part or the determination was made under factual circumstances meeting the jurisdictional standards of this part and the determination has not been modified in accordance with this part.”).
*564 We also conclude that the trial court did not err in denying Mother’s petition for modification. A trial court’s ruling on a request for modification of a time-sharing schedule is reviewed for an abuse of discretion. See Holland v. Holland, 140 So.3d 1155, 1156 (Fla. 1st DCA.2014) (citing Wade v. Hirschman, 903 So.2d 928, 935 (Fla.2005)). A party seeking modification of a time-sharing schedule has “the extraordinary burden of proving (1) a substantial and material change in circumstances, and (2) that the best interests of the child will be promoted by such modification.” Wade, 903 So.2d at 933. The substantial and material change in circumstances must have occurred subsequent to the last order addressing time-sharing. Bennett v. Bennett, 73 So.2d 274 (Fla. 1954). Mother argues that one of the children has become more emotionally stable since reducing the amount of contact she has with Grandparents and that there are significant differing parenting styles and religious beliefs between Mother and Grandparents. We find that the trial court did not abuse its discretion in determining that there had not been a substantial and material change in circumstances during the 13 days between the entry of the Colorado order and the filing of Mother’s petition.
On cross-appeal, Grandparents argue that the trial court erred in denying them make-up visitation or time-sharing. Although the trial court specifically declined to find that Mother was in contempt of the Colorado order awarding Grandparents visitation privileges, this finding does not preclude a trial court from ordering makeup visitation. See Cummings v. Cummings, 723 So.2d 898, 899 (Fla. 4th DCA 1998). Moreover, the trial court did not deny Grandparents make up visitation or time-sharing. Rather, the trial court specifically reserved jurisdiction to consider Grandparents’ motion for enforcement/contempt and make-up visitation. Therefore, the issue is not ripe for appeal. See E.B. v. State, 724 So.2d 140, 141 (Fla. 4th DCA 1998) (finding that the issue was not ripe for appeal as “[t]he trial court merely reserved jurisdiction to determine at a later hearing ... ”). On remand, the trial court is directed to promptly address Grandparents’ motion for make-up visitation.
We also find it necessary to remand to address Grandparents’ entitlement to attorney’s fees and court costs. Grandparents argue that they were entitled to attorney’s fees and costs pursuant to section 61.535, Florida States (2013), which provides:
So long as the court has personal jurisdiction over the party against whom the expenses are being assessed, the court shall award the prevailing party, including a state, necessary and reasonable expenses incurred by or on behalf of the party, including costs, communication expenses, attorney’s fees, investigative fees, expenses for witnesses, travel expenses, and expenses for child care during the course of the proceedings, unless the party from whom fees or expenses are sought establishes that the award would be clearly inappropriate.
§ 61.535(1), Fla. Stat. (2013). Our record does not indicate that the trial court, in summarily denying Grandparents’ request for attorney’s fees, considered whether assessing attorney’s fees against Mother would be “clearly inappropriate.” On remand, if the trial court concludes that Grandparents are not entitled to attorney’s fees, it should make specific findings as to why an award would be clearly inappropriate.
In her brief, Mother acknowledged that our decision today may be controlled by our prior decision in .Bellow, and, if so, requested that we certify conflict with the *565 Fourth District Court of Appeal’s decision in M.S. v. D.C., Jr., 763 So.2d 1051 (Fla. 4th DCA 1999) (holding that the Full Faith and Credit Clause does not trump Florida’s overriding public policy of a guaranteed fundamental right of privacy in child-rearing autonomy). We did so in Shingel and again do so now.[3] See Shingel, 867 So.2d at 1281.
AFFIRMED; CONFLICT CERTIFIED; REVERSED and REMANDED as to cross-appeal.
JACOBUS, B.W., Senior Judge, and McCUNE, R.J., Associate Judge, concur.

. Our record does not indicate whether the trial court ruled on the motion to stay.

. § 61.504(4), Fla. Stat. (2013) (defining “child custody proceeding” as “a proceeding in which legal custody, physical custody, residential care, or visitation with respect to a child is an issue”).

. In Shingel v. Peters, 879 So.2d 623 (Fla.2004), the Florida Supreme Court granted review of the case. But in Schingel v. Peters, 888 So.2d 18 (Fla.2004), the court dismissed the case without addressing the conflict.