IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

JASON RAY RIVERA,

      Appellant,

v.                                                                    Case No.  5D17-2198

SHANNON PURTELL,

      Appellee.

_____/

Opinion filed June 22, 2018

Appeal from the Circuit Court for
Orange County,
Heather Pinder Rodriguez, Judge.

Christie Mitchell, of The CLM Law Firm,
P.A., Orlando, for Appellant.

Shannon L. Akins, of Law Offices of
Shannon L. Akins, P.A., Orlando, and David
T. Roberts, of The Roberts Family Law
Firm, P.A., Orlando, for Appellee.


EISNAUGLE, J.

      Jason Ray Rivera ("Father") timely appeals an order that granted Shannon

Purtell's ("Mother") motion for a new trial and set aside a Final Judgment of Paternity,

Parental Responsibility, Timesharing and Child Support ("Final Judgment").  Father's only

argument on appeal is that the trial court erroneously concluded in its order granting a

new trial that it could not prospectively modify timesharing as of the time the child starts

kindergarten.  We agree with Father and reverse the trial court's order granting a new trial.

### *The Final Judgment and Order Granting New Trial*

Mother and Father both filed petitions to determine paternity below.  At the conclusion of trial, the court entered a Final Judgment finding that Father is the child's biological and legal father and set a timesharing schedule.[1]

Initially, the court ordered equal timesharing, with each parent having the child multiple nights during the week even though the parties live about fifty miles apart.  However, the Final Judgment provided that once the child started kindergarten, the child's residence for school purposes would be Father's home.  At that point, Father would have majority timesharing during the school year unless Mother has "moved within 25 miles" of Father's residence by that time.

Mother moved for rehearing and a new trial, arguing, *inter alia*, that the Final Judgment "improperly and prospectively required what amounts to a relocation of the child."  She argued that the trial court could not make a "prospective" determination as to timesharing, citing to *J.P. v. D.P.*, 196 So. 3d 1274 (Fla. 1st DCA 2016).  According to Mother, *J.P.* prohibits the trial court from making *any* determination based on future events.

After a hearing, the trial court granted Mother's motion for new trial, citing *J.P.* and *Arthur v. Arthur*, 54 So. 3d 454 (Fla. 2011)*.*  In so doing, the trial court echoed the *Arthur* decision and reasoned that:

> the court is not equipped with a crystal ball that enables the court to determine what is best for the child when she is

---

[1] The child was three years old at the time of trial.

> school-aged. Rather, the court can only make a determination
> of the best interest of the child at the time of the final hearing.

On appeal, Father argues that the trial court erred as a matter of law when it determined that it could not prospectively determine a change in timesharing based upon the child starting kindergarten. Father distinguishes *Arthur* and its progeny, arguing that the trial court may prospectively determine timesharing based upon an objectively and reasonably certain future event, citing to this court's decisions in *Snowden v. Snowden*, 985 So. 2d 584 (Fla. 5th DCA 2008) and *Stevens v. Stevens*, 929 So. 2d 721 (Fla. 5th DCA 2006). Mother, on the other hand, argues that *Arthur* and *J.P.* apply here, and that the trial court's timesharing plan is improperly prospective.

We review the trial court's order granting rehearing and a new trial de novo because the only issue on appeal presents a pure question of law. *See Van v. Schmidt*, 122 So. 3d 243, 252 (Fla. 2013).

### Arthur *and Prospective Determinations in Family Law Cases*

In *Arthur*, our supreme court considered the propriety of a "prospective based" relocation determination in a dissolution action based upon the best interests of a child at some time in the future. In that case, the trial court designated former wife as the primary residential parent and granted her request to relocate with the child, but delayed the relocation for twenty months until the child was three, concluding that the delay would give the child time to bond with former husband. *Arthur*, 54 So. 3d at 455.

On appeal, former husband argued that the delayed relocation "was a prospective determination of the child's best interest and that the court lacked authority to make such a determination." *Id.* The second district affirmed, concluding that the trial court's detailed findings supported the delayed relocation request. *Id.* at 456.

3

On review, the Florida Supreme Court disagreed and reversed the portion of the order which prospectively authorized relocation of the child. The court explained:

> the trial court authorized the relocation based in part on its conclusion that relocation would be in the best interests of the child twenty months from the date of the hearing. Such a "prospective-based" analysis is unsound. Indeed, a trial court is not equipped with a "crystal ball" that enables it to prophetically determine whether future relocation is in the best interests of a child. Any one of the various factors outlined in section 61.13001(7) that the trial court is required to consider, such as the financial stability of a parent or the suitability of the new location for the child, could change within the extended time period given by the court before relocation.

*Id.* at 459. In conclusion, the supreme court held that "[b]ecause trial courts are unable to predict whether a change in any of the statutory factors will occur, the proper review of a petition for relocation entails a best interests determination *at the time of the final hearing,* i.e. a 'present-based' analysis." *Id.*

Since *Arthur* was decided, Florida's district courts have wrestled with its application. In *Krift v. Obenour*, 152 So. 3d 645 (Fla. 4th DCA 2014), for instance, the fourth district interpreted *Arthur* narrowly, appearing to conclude that the prohibition on prospective-based determinations does not apply outside of the context of a petition for relocation of the child. *Id.* at 649. In that case, the trial court awarded equal, rotating timesharing between the parties until the minor child reached kindergarten. *Id.* at 647. Upon the child starting school, however, the trial court designated former husband the primary residential parent and gave him majority timesharing. *Id.*

On appeal, former wife argued that the trial court's modification of timesharing upon the child starting kindergarten was an "improper prospective relocation of the child." *Id.* at 648. The fourth district disagreed and distinguished *Arthur,* concluding that the "trial

4

court's decision regarding the child's residence upon reaching kindergarten age is not a ruling on a relocation request." *Id.* at 649. The court reasoned that the "parenting plan in the amended final judgment does not involve 'relocation' . . . but rather orders that the father become the primary residential parent once the child begins kindergarten." *Id.*

In *J.P.*, the first district took a broader view of *Arthur*, and applied the prospective-based prohibition to a timesharing determination. In that case, the trial court granted primary residency for the parties' six-year-old daughter to the father during elementary school, but prospectively changed the child's residency, requiring her to move 300 miles, when she started middle school. 196 So. 3d at 1275.

On appeal, the first district reversed, concluding that the trial court's "prospective-based" change in the child's residence was contrary to *Arthur*. *Id.* at 1277. The district court reasoned that:

> the trial court was not equipped with a crystal ball that would enable it to determine whether it would be in the best interests of the child, who is currently in first grade, to relocate over 300 miles away to live with her mother when she begins middle school. The relevant determination is the best interests of the child at the time of the final hearing. At the time of the final hearing, the court determined that it was in the child's best interests to live with appellant in Orlando and go to school there. Thus, the trial court abused its discretion when it ordered that she would relocate to live with her mother upon finishing elementary school.

*Id.*

## Arthur *Does Not Apply to Determinations Based on Reasonably Certain Future Events*

We reject Mother's argument that the Final Judgment in this case violates *Arthur*. In our view, *Arthur* only prohibits a trial court from *predicting* a change in a child's best interests as of some future date or event. Such a practice would, of course, require the

5

trial court to engage in an educated guess at best, and pure speculation at worst. However, we conclude that *Arthur* does not prohibit a timesharing plan which, as here, applies the child's best interests as determined *at the time of the final hearing* to an event that is reasonably and objectively certain to occur at an identifiable time in the future. In such a case, the trial court's determination is based upon the facts before it at the final hearing, and no crystal ball is required.

Likewise, *J.P.* does not advance Mother's argument for two reasons. First, to the extent *J.P.* holds that a trial court may not account for reasonably and objectively anticipated changes when creating a timesharing plan, we find it unpersuasive. Indeed, when crafting a timesharing plan, a trial court *must* be free to account for reasonably and objectively certain future events. Otherwise, the parties would be required to continuously seek permission from the court after every change that inevitably occurs in a child's life, like starting school. We decline Mother's invitation to interpret *Arthur*'s prohibition so broadly that Florida's trial courts become de facto parents.

Second, our holding today is not necessarily inconsistent with *J.P.* In *J.P.*, the change in residency was not based upon the child starting school outright, but rather on the child graduating from elementary to middle school. Importantly, there is nothing in *J.P.* to indicate that a shift from elementary school to middle school itself would justify a change in the child's residency or timesharing. In this case, the material change in circumstances was the expectation that the child would start school, not simply progress to the next grade.

Although not directly on point, we agree with Father that our decisions in *Snowden v. Snowden*, 985 So. 2d 584 (Fla. 5th DCA 2008) and *Stevens v. Stevens*, 929 So. 2d

6

721 (Fla. 5th DCA 2006) are instructive. In *Snowden*, former husband petitioned to modify child custody and to enforce a final judgment that provided for a change in custody if either party consumed alcoholic beverages or illegal drugs while the children were in that party's custody. 985 So. 2d at 585–86.

The trial court denied the petition, finding that although former wife had consumed alcohol on a couple of occasions, she was never "impaired" while the children were in her custody. On appeal, former husband argued that *Stevens* was controlling, and that the trial court abused its discretion in refusing to order a change in custody based upon a future event (former wife's use of alcohol) identified in the final judgment.

We rejected former husband's argument, however, reasoning that *Stevens* "involved a planned custody change based upon an expected date-certain event." *Snowden*, 985 So. 2d at 587. We noted that in *Stevens* "the parties could reasonably anticipate the circumstances that would exist at the end of the husband's tour of duty, and the court could therefore make a reasoned best interests determination based upon those anticipated circumstances." *Id.* In contrast to *Stevens*, we concluded in *Snowden* that the trial court "could not have reasonably anticipated when, if ever, the [change in custody] provision would become operative." *Id.*

The reasoning employed in *Snowden* is consistent with *Arthur* and applicable here. There was nothing speculative or uncertain about the child in this case starting kindergarten. In fact, section 61.13(2)(b)3.b, Florida Statutes (2016), anticipates that children will start school and therefore requires a trial court to designate a residence for school boundary purposes when entering a timesharing order. Such an event is by definition a reasonably and objectively anticipated change in circumstances that will occur

7

at a time certain.  Thus, in this case, it was entirely proper for the trial court to adjust timesharing as of the time the child starts kindergarten.  As such, we conclude that the Final Judgment does not violate *Arthur*'s prohibition on prospective-based best interest determinations, and that the trial court erred in granting rehearing and a new trial on that ground.

We therefore reverse the order granting Mother's motion for rehearing and new trial, and instruct the trial court to reinstate the Final Judgment.

REVERSED and REMANDED.

COHEN, C.J., and TORPY, J., concur.